**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
*FORT LAUDERDALE DIVISION*
*www.flsb.uscourts.gov*

In re:

**GLOBAL ENERGIES, LLC,** f/k/a 714              **CASE NO.    10-28935-BKC-RBR**
Technologies, LLC,

                                                 Chapter 11 (Involuntary)

        Debtors.

_____/

### JOSEPH G. WORTLEY'S EXPEDITED MOTION TO DISMISS CASE AS HAVING BEEN FILED IN BAD FAITH

***THE COURT HAS SET AN EXPEDITED HEARING ON THE TRUSTEE'S EXPEDITED MOTION TO SELL THE DEBTOR'S ASSETS FOR OCTOBER 13, 2010 AT 1:30 P.M., MOVANT WOULD RESPECTFULLY REQUEST THAT THIS MOTION BE SET FOR PRELIMINARY HEARING AT THAT SAME TIME AND PLACE***

Creditor and party in interest Joseph G. Wortley, Jr., ("Wortley") by and through undersigned counsel and pursuant to Sections 105 and 1112 of the Bankruptcy Code, 11 U.S.C. 101, et seq (the "Code"), Rules 1017 and 9014 of the Federal Rules of Bankruptcy Procedure (a "Rule" or the "Rules") and generally, the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (a "Local Rule" or the "Local Rules") respectfully moves the Court (the "Motion") for the entry of an Order dismissing this bankruptcy case as – without limitation – having been filed in bad faith, and as grounds therefore states:

### THE PARTIES

1.      Wortley is a partial owner of the Debtor.

2.      James Juranitch ("Juranitch") is the majority shareholder of the Debtor and its president.

3.      Chrispus Venture Capital, LLC ("Chrispus") is another minority shareholder of the Debtor, and an alleged creditor of the Debtor.

4.      Chrispus is also the petitioning creditor in this chapter 11 case (the "Case") and the stalking horse in an asset purchase agreement to purchase the Debtor.

5.      Richard Tarrant is, upon information and belief, the majority, if not sole owner, of Chrispus.

6.      Barry E. Mukamal is the duly appointed and acting Chapter 11 Trustee in this case ("Trustee").

## BACKGROUND

7.      Wortley and Juranitch originally went into business together in July 2008.  Put most broadly, their intent was to pursue business opportunities relating to Juranitch's expertise in the power generation field, and Wortley's ability to fund those opportunities (for convenience, the "Business Opportunities").

8.      Wortley has loaned the Debtor significant funds and provided significant monetary and non-monetary accommodations to enable the Debtor to pursue the Business Opportunities.

9.      Initially, Wortley and Juranitch formed the Debtor and entered into numerous agreements deemed necessary to pursing the Business Opportunities, both between themselves and with various third parties.

10.     Tarrant became involved in May of 2009.  The parties then amended certain agreements and Tarrant, through Chrispus, became a shareholder.

11.     As part of his agreement(s) with the Debtor, Tarrant also loaned money to the Debtor.

12.    The controlling document is the Amended and Restated Operating Agreement of [the Debtor] dated May 29, 2009 (the "Operating Agreement") which is signed by Juranitch, Wortley and Chrispus.

13.    The Operating Agreement appoints Juranitch and Wortley as the managers or members of the "Board" and directs that the Board shall manage the Debtor.

14.    Although Wortley (and Tarrant) have involvement, the day to day affairs of the Debtor are (or were) run by Juranitch.

15.    Sometime in April or May of 2010, Juranitch and Tarrant decided to re-work the corporate structure of the Debtor.  Although the terms were not static, the essence of it was that Wortley's interest in the Debtor would be significantly diluted or eliminated) and Tarrant and Juranitch would own and run the Debtor thereafter.

16.    When Wortley did not acquiesce, Juranitch and Tarrant went on the offensive.

17.    On May 13, 2010, Juranitch and others removed virtually all of the Debtor's personalty from its premises in the dark of night.  (Some, perhaps even most, of this personalty was returned post petition, and is now in the control of the Trustee.)

18.    At some point during this offensive, Tarrant and Juranitch, upon information and belief, began pursuing the Business Opportunities through a new entity.

19.    Upon further information and belief, Juranitch, the President of the Debtor, has not made any attempts to further the Debtor's interests vis a vis the Business Opportunities, but is instead working against the Debtor's interest with his and Tarrant's new company.

20.     At some point after May 13, 2010, and upon information and belief, Tarrant began making payments to certain creditors of the Debtor, which Wortley believes was done to manipulate the creditor body in order to enable the involuntary bankruptcy pursuant to Section 303(b)(2) (which requires that the alleged debtor have less than 12 creditors).

21.     When Wortley didn't cave to their demands, Tarrant caused Chrispus to file the instant involuntary Case <u>against</u> <u>his</u> <u>own</u> <u>company</u> and to seek the appointment of the Trustee.

22.     Juranitch did nothing to defend the involuntary and has consistently ignored his fiduciary obligations to the Debtor and his fellow shareholders.

23.     While Wortley is not (yet) fully cognizant of what has transpired, it seems fairly clear that Juranitch and Tarrant have decided to pursue the Business Opportunities without him.

24.     Wortley believes that the Debtor had and continues to have considerable value, and he intends to pursue litigation against – without limitation - Juranitch, Tarrant and Chrispus for their conduct in destroying and/or attempting to remove him from the Debtor and reserve its value and the Business Opportunities for themselves.

25.     Rather than face the litigation which was certain to ensue as a result of their plan, Juranitch, Tarrant and Chrispus sought refuge before this Court in an attempt to legitimize their scheme.

26.     To be clear, this bankruptcy was orchestrated by Juranitch, Tarrant and Chrispus, and filed by Chrispus, in order to disenfranchise Wortley from his

ownership interest in the Debtor, and preserve all of the value of the Debtor and the Business Opportunities for themselves in the guise of their new entity.

27.     The Trustee has agreed to sell the Debtor to Chrispus.  Although the "price" is mildly complex, it appears that the proceeds to the estate will be approximately $500,000 which – coincidently – is the same amount as Wortley's claim in the Case.  So it appears that the "Sale" is designed to accomplish what Tarrant has sought all along, to disenfranchise Wortley from his ownership and walk away with the Debtor and its Business Opportunities.

28.     The scheme needs only one additional participant – the Court.

## THE BANKRUPTCY

29.     Shortly after the Order for Relief, on August 6, 2010, Juranitch, as President of the Debtor, through a somewhat curious cooperation with Rice Pugatch Robinson and Schiller (counsel for Tarrant and Chrispus), filed the list of the 20 largest unsecured creditors (CO # 19, the "List").  The List showed five creditors.  One creditor had no address (Dr. Richardson for $25,000), the remaining four creditors (with addresses) totaled $4,899.08.

30.     Juranitch is – without limitation - the majority shareholder of the Debtor, the President of the Debtor, one of the managing members of the Debtor's Board, and, is in charge of the day to day affairs of the Debtor.  Yet, he made no effort to defend the involuntary petition, and in fact has actively cooperated with Tarrant and his counsel.

31.     The involuntary was granted and relief was ordered on August 4, 2010 (CP # 15, the "Order for Relief").

32.     In conjunction with the initial filing, Chrispus also filed a Motion for Appointment of Chapter 11 Interim Trustee (CP #4), seeking the appointment of an interim trustee in this case, which relief was granted on an agreed basis by Order dated August 4, 2010. (CP #16).  Mr. Barry E. Mukamal ("Chapter 11 Trustee") is the duly appointed and acting Chapter 11 trustee in this case.

33.     The Trustee has moved to reject an alleged personal property lease in connection with certain equipment that is or may be critical to the Debtor's Business Opportunities (CP # 39, the "Trustee's Motion to Reject").  Juranitch expressly supported the Motion while Wortley opposed it.  The Court refused to grant the Trustee's Motion to Reject, but continued it to be heard in conjunction with the promised sale motion.

34.     The Trustee has also moved to sell the Debtor to Chrispus (CP # 51, the "Sale Motion").

## RELIEF SOUGHT

35.     This Motion seeks an Order dismissing this Case as having been filed in bad faith.  The bad faith is a based on – without limitation – three simple notions: one, that it is collusive and fraudulent upon this Court's jurisdiction: two, that it is not intended to achieve any viable reorganizational purpose; and, three, that it is inappropriate to maintain this entire case for the benefit of the miniscule creditor body.

## LEGAL ARGUMENT

Juranitch and Tarrant conspired to file this Case in order to disenfranchise their unwanted partner, Wortley, and retain the Business Opportunities that belong to the

Debtor. Case law is clear that collusive involuntary bankruptcies are bad faith, and that

they fraudulently invoke the jurisdiction of the Court.

One of the leading cases is In re Winn, 49 B.R. 237 (Bankr. M.D. Fla. 1985). In

Winn, Judge Paskay stated that:

> "There is no question that this Court is duty bound to conduct an inquiry at the outset of the case if requested to determine the legitimate purpose of the parties who sought to invoke the jurisdiction of this Court and take appropriate steps to prevent the abuse of the bankruptcy process. *In re Mallard Associates,* 463 F.Supp. 1259 (S.D.N.Y. 1979*); In re Joseph Mass,* 2 B.C.D. 973 (D. Mass. 1976). The fact that this is an involuntary case would not preclude this Court to inquire into the presence or absence of good faith, especially to the extent of his involvement and his role in the institution of the involuntary case. Mongiello Bros. Coal Corp. v. Houghtaling Properties, Inc*.,* 309 F.2d 925 (5th Cir. 1962). Thus, regardless of the nature of the petition, whether it is voluntary or involuntary, the Court must protect the integrity of its jurisdiction and when the issue is raised, it is proper for the Court to inquire to what extent the Debtor is involved in the institution of an involuntary case and if it appears there was collusion between the Debtor and the petitioning creditors, and they fraudulently invoked the jurisdiction of the Court, the Court will not tolerate the maintenance of an involuntary petition.

Winn, 49 B.R. 237 at 239

The only Circuit level court to consider bad faith in the involuntary context was

the Second Circuit in F.D.I.C. v. Cortez, 96 F.3d 50 (C.A.2 (N.Y.), 1996, which cited

Winn with approval.

In In re Clifton Power Corporation, C/A No. 09-04207-HB (Bankr. S.C. 9/21/2009)

(Bankr. S.C., 2009), the facts were similar to the instant case. There, debtor's owner

filed the involuntary case against his own company. The Court dismissed the case as

having been filed in bad faith, and noted that:

> "There can be no stronger evidence of collusion in the filing of an involuntary petition than when the same party appears on all sides of the petition"

In re Clifton Power

Wortley suggest that the Court will have little trouble determining that there was collusion in the filing of this Case.  Although Winn and FDIC suggest that a collusive filing is a fraud upon the Court, no case clearly suggests that the dismissal is mandatory.  See, In re Kingston Square Associates, 214 B.R. 713 (Bankr. S.D.N.Y., 1997).  Rather, while the collusion is a significant factor in the good/bad faith analysis, the court must still consider the broader picture and the requirements of Section 1112.

As is relevant here, Section 1112(b) states as follows:

> **(b)**
> **(1)** Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104 (a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
> 　　**(2)** The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that—
> 　　　　**(A)** there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121 (e) and 1129 (e) of this title, or if such sections do not apply, within a reasonable period of time; and
> 　　　　**(B)** the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—
> 　　　　　**(i)** for which there exists a reasonable justification for the act or omission; and
> 　　　　　**(ii)** that will be cured within a reasonable period of time fixed by the court.

The case law simplifies the statute down to its essence fairly quickly, by asking whether there is "cause" and what is best for the creditors and the estate.  See, In Re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (C.A. 11 (Fla.), 1988).

A case under Chapter 11 may be dismissed for cause pursuant to section 1112 of the Bankruptcy Code if the petition was not filed in good faith. Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984). See also Shell Oil Co. v. Waldron (In re Waldron), 785 F.2d 936 (11th Cir.), (Chapter 13 petition dismissed because of bad faith filing.), cert. dismissed, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986).

Although there is no particular test for determining whether a debtor has filed a petition for reorganization in good faith, "[i]n finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions." In re Natural Land Corp., 825 F.2d 296 (C.A. 11 (Fla.), 1987), citing Albany Partners, supra.

This Court must now determine if cause exists and what result would be in the best interest of "creditors" and the estate.  Of course, there effectively are no creditors. To the extent that the de minimus creditor body is troublesome to the Court, it would seem appropriate that they be paid, in full.  While it would also seem appropriate that the "petitioning creditors" pay that bill, Wortley would pay it if necessary.

Wortley also agreed to the appointment of the Trustee, and recognizes that the Trustee and his professionals should be paid.  Again, if the Court finds bad faith and is inclined to dismiss, the petitioning creditor should pay those bills.

Several Courts have put the matter most simply that "the critical test of a debtor's bad faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy."   In re Halal 4 U LLC (Bankr. S.D.N.Y., 2010) (citing In re Loco Realty Corp., 200,9 WL 2883050 and In re 6,8 W. 127 St., LLC, 285 B.R. 838 (Bankr. S.D.N.Y. 2002).

Wortley is hard pressed to fathom what rational bankruptcy purpose Tarrant, Chrispus and Juranitch hoped to achieve other than their scheme to disenfranchise Wortley.  Having begun working elsewhere to exploit the Business Opportunities, they would have trouble arguing that they want to save or "reorganize" the Debtor.  This is particularly so where Juranitch, the President of the Debtor, supported the Trustee's decision to give away equipment necessary to the Debtor's business.  Moreover, if Tarrant and Juranitch wanted to salvage the Debtor, they would have no need for a bankruptcy to do that since there are no creditors impacting the Debtor in any way (except of course Chrispus).

"The bankruptcy laws are intended as a shield, not as a sword." In re Penn Central Transportation Co., 458 F.Supp. 1346, 1356 (E.D. Pa. 1978).  The only parties who may potentially derive any benefit from this bankruptcy Case are Tarrant, Chrispus and Juranitch.  They do not need nor are they entitled to the Court's protection or assistance.  This Case was filed in bad faith and should be dismissed.

WHEREFORE, Joseph G. Wortley respectfully requests that the Court enter an Order dismissing this Case, with prejudice, ordering Chrispus to pay all unsecured creditors and all administrative expenses of this Case, and for such other and further relief as the Court deems to be just and equitable.

## CERTIFICATES OF COMPLIANCE AND SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

**I FURTHER CERTIFY** that on this date a true and correct copy of the foregoing was filed via the Court's CM/ECF system, and thereupon served on all parties entitled to

notice via that system, and that true copies were also served on all parties on the Service List below via the means indicated.


Dated: October 7, 2010                   Respectfully submitted,

                                         /s/ David R. Softness
                                         David R. Softness, Esq.
                                         FBN:  513229
                                         **DAVID R. SOFTNESS P.A.**
                                         **COUNSEL FOR WORTLEY**
                                         1200 Brickell Avenue
                                         Suite 1900
                                         Miami, FL  33131
                                         Tel:           305-373-3232
                                         Email:         dsoftness@softnesslaw.com

## SERVICE LIST

**VIA CM/ECF**

Barry E. Mukamal
SunTrust International Center
One S.E. Third Avenue, 10th Floor
Miami, Florida 33131
*Chapter 11 Trustee*

Jeffrey P. Bast, Esq.
Bast Amron, P.A.
SunTrust International Center
One Southeast Third Avenue
Suite 1440
Miami FL 33131
*Counsel for Chapter 11 Trustee*

Office of the United States Trustee
51 SW First Avenue, Suite 1204
Miami, Florida 33130

Chad D. Pugatch, Esq.
George L. Zinkler, Esq.
Rice Pugatch Robinson & Schiller P.A.
101 Northeast Third Avenue, Suite 1800
Ft. Lauderdale, Florida 33301
*Counsel for Chrispus Venture Capital,
LLC*

**BY EMAIL**

James Juranitch
714 N.E. 20th Avenue
Ft. Lauderdale, Florida 33304
(Jim@Juranitch.com)

Nolan Klein, Esq.
Law Offices of Nolan Klein, P.A.
City National Bank Building
25 W. Flagler Street
Suite 900
Miami, FL 33130
klein@nk-legal.com
Counsel for James Juranitch